IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN ANTHONY WILLIAMS, JR., )
     Plaintiff )
      )
v. )
      )
JET ONE JETS, INC., )
     a Delaware Corporation, )
LOUIS OTTIMO, )
ANTHONY OTTIMO, )
AMERICAN EXPRESS COMPANY,)
     a New York Corporation, and )
AMERICAN EXPRESS )
INCENTIVE SERVICES, L.L.C., )
     a Missouri Limited Liability )
     Company, )
     Defendants )

Civil Action No. 1:08-CV-3737-TCB

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT OF JET ONE JETS, INC.

Comes now, John Anthony Williams, Jr. ("Plaintiff"), by and through the undersigned counsel of record, in support of Plaintiff's response in opposition to *Defendant Jet One Jets, Inc.'s Motion For Partial Summary Judgment* [#119], submitted by Defendant Jet One Jets, Inc. ("Jet One"), and respectfully shows this Court as follows:

# I.  INTRODUCTION

The brief and statement of facts submitted by Jet One Jets, Inc. is nearly identical to that submitted by Louis Ottimo.  Notably, Jet One Jets, Inc. makes no attempt for the clear breach of contract – there is no question that Jet One did not perform.  The issue for Plaintiff's fraud claim is whether Jet One ever *intended* to perform.  If it did not, then the economic loss rule does not apply.  Plaintiff submits that there is sufficient evidence to submit the question of Jet One's intent to a jury and to deny summary judgment to Jet One.  The Court previously held that Mr. Louis Ottimo could not be held liable for fraud because Plaintiff could not specifically identify Louis Ottimo as having made the misstatements to Plaintiff.  But this technicality does not excuse Jet One, because *all* of the persons making statements to Plaintiff were representatives of Jet One.  Accordingly, Plaintiff moves this Court to DENY Jet One's Motion for Summary Judgment.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. The Economic Loss Rule does not preclude Plaintiff's claims (Counts I, II, III, V, and VIII)

Defendant seeks summary judgment on Counts I, II, III, V, and VIII based upon the economic loss rule.  However, this rule is inapplicable based upon the "misrepresentation exception" to the economic loss rule.

### 1.      The Misrepresentation Exception

This misrepresentation exception is defined as follows:

[o]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.[1]

Here, the misrepresentation exception clearly applies.  (1) Jet One (at least) negligently supplied false information to Plaintiff, who was not only a foreseeable recipient of the information, but the intended recipient; (2) Plaintiff reasonably relied upon the false information; and (3) Plaintiff suffered economic injury proximately resulting from such reliance.

### 2.      Persons Communicated to Plaintiff on Behalf of Jet One

Plaintiff communicated with Jet One by phone and email, including its representative RJ LaSasso, Louis or Anthony Ottimo, and an office person. (Williams Dep 13:10-15:11).  The email address RJ LaSasso sent from was JetOneJets.com. (Williams Dep 18:10-12).  Plaintiff spoke with persons at Jet One's New York office. (Williams Dep 15:5-7).  Louis and Anthony Ottimo were

---

[1] *City of Cairo v. Hightower Consulting Engineers, Inc.*, 278 Ga. App. 721, 729, 629 S.E.2d 518, 525 (2006).

the two executives of Jet One, and had control over Jet One's day-to-day

operations. (Ottimo Dep. 17:5-12).  RJ. Lassasso, a Jet One salesperson, worked

directly with Plaintiff in the purchase of the AccessOne program. (Ottimo Dec.  10;

Jet One Statement of Facts.) As set forth *infra*, written sources of information also

came from Jet One, including a brochure, website, and advertisements.

### 3.    Jet One Makes Knowing Misrepresentations

Jet One represented multiple facts to Plaintiff which Jet One did not intend

to be true.  Jet One put out a brochure which advertised the AccessOne Card ([#84-

9] P-000117 to 119) (Williams Dep. 8:7-9:19; 25:5-11); [#84-8] P-000116.  Jet

One advertised the AccessOne Card through its website, magazine advertisements,

and events. (Exh 7 pg 8).  The Purchase Agreement provided that Plaintiff was

purchasing the AccessOne Card. ([#84-7] P-000024).

Indeed, Jet One admitted that "Plaintiff purchase an Access One Card from

Jet One Jets, Inc." and that the "AccessOne Card cost Plaintiff $150,000") (Exh 7

pg 7).  But then, Mr. Louis Ottimo, principal of Jet One, admitted that Jet One

never intended from the beginning to turn Plaintiff's funds over to American

Express or AEIS and issue the American Express branded card, but instead claims

that "Mr. Williams was not part of that [American Express] program." (Ottimo

Depo 185:2-12).

### 4.      Promise/Representation – $160,000 in Credit

The purchase agreement is for a denomination of $150,000. (Williams Dep 23:25-24:3). ([#84-7] P-000024.)  In his communications, Plaintiff was promised a $10,000 promotion, whereby Plaintiff would receive $160,000 in credit for a $150,000 payment, but Jet One has not provided the benefit of that promotion. (Williams Dep 108: 18-23; 116:9-14).  But, as Jet One set forth in its own Statement of Facts, it could not deliver an Access One Card in this increment. Access One cards could only be sold in 4 increments: $100,000; $200,000; $500,000; and $1 Million. (Ottimo Dep 263 19:25).  Plaintiff's Statement of Facts sets forth fully the detail of the transactions and that he should have had a remaining balance of  $109,368.75, but Jet One has refused to return it to him. (Williams Dep 105:2-14).

### 5.      Promise/Representation – The Delivery of an American Express Branded Access One Card

In his communications, Jet One representatives LaSasso and the Ottimos told Plaintiff that American Express was a part of the program. (Williams Dep 45:10-14). See also Purchase Agreement ([#84-7] P-000024).  Jet One never disclosed to Plaintiff that he would not receive a physical card as shown in the marketing. (Ottimo Dep 247:6-10).

But it is evident from Jet One's conduct that it never intended to deliver the card.  As noted above, it was impossible for it to do so per its agreement with AEIS, as $150,000 and $160,000 were not possible increments.  Moreover, Jet One did not input the information regarding Plaintiff into the American Express system so that they could send him a card. (Exh 8 pg 7).  Jet One never ordered an AccessOne card from American Express or AEIS for Plaintiff. (Ottimo Dep 258:14-21).  Thus, AEIS never issued a card to Plaintiff. (Hood Dep 25:25).

**6.    Promise/Representation – Collateral Material**

Plaintiff was to receive a Jet One Jets American Express branded card, a humidor, and other gifts, and a point system for additional perks. (Williams Dep 28:5-13).  See also Purchase Agreement ([#84-7] P-000024).  But Plaintiff has never received an AccessOne Card, silver cigar cutter, or humidor. (Williams Dep 50:9-13; 109:3-9); (Ottimo Dep:245:19-22).  As Jet One did not consider Plaintiff part of the "American Express" program, despite promising in marketing and in the Purchase Agreement that he would be, it is evident that Jet One did not intend to provide these collateral material at the time of making the promise to deliver it. (Ottimo Depo 185:2-12).

### 7.  Promise/Representation – Delivery of Funds to American Express

The brochure represented in Entitlements that "Secured investment funds prepaid and held by American Express." (Williams Dep 103:25-104:3); ([#84-9] P-000118).  In his communications, Jet One representatives LaSasso and the Ottimos told Plaintiff that the funds would be held by American Express. (Williams Dep 39:2-10).  RJ Lassasso or the Ottimos told Plaintiff that the funds would be held in an American Express account. (Williams Dep 74:11-79:1).  Jet One did not deliver Plaintiff's funds to American Express to AEIS. (See Ottimo Dep 183:18-184:25; 258:22-259:3).  As set forth above, Jet One did not intend to deliver these funds. This has damaged Plaintiff, as American Express was supposed to provide security.  Jet One refused to provide a flight to Plaintiff, and Louis Ottimo told Plaintiff it was because <u>Jet One Jets did not have the funds</u> to cover the flight, and that Jet One's funds were "tied up" as it pursued an acquisition opportunity. (Williams Dep; 55:22-57:4; 80:21-81:15). Jet One has refused to return any funds to Plaintiff, including the $109,368.75 balance.  (Williams Dep 105:2-14).  But Plaintiff did not bargain to assume the risk of Jet One's potential insolvency, expecting instead to deal with the well-known American Express and its stability. This was a material misrepresentation intended to convince Plaintiff to send funds to Jet One, and allay any fears about Jet One not being able to deliver.

### 8. Promise/Representation – American Express rewards points

The brochure represented in Entitlements that he would receive American Express rewards points when he would make purchases as part of the AccessOne Card program, but Plaintiff has not received American Express rewards points. (Williams Dep 103:16-24); ([#84-9] P-000118).  As noted above, because Jet One apparently did not intend Plaintiff to be part of the American Express program despite its promise otherwise, Jet One also did not intend the Plaintiff receive the promised rewards points.

### 9. Plaintiff Exercises Due Diligence

Plaintiff exercised diligence by researching Jet One before he purchased (Williams Dep 24:12-13; 114:25-115:14; 28:19-24), reading the brochure (Williams Dep 102:18-24), and reviewing the terms of the Agreements (Williams Dep 25:20-26:4).  But he could not know of Jet One's secret intent not to deliver what was promised.

### 10. Jet One Intended Plaintiff to Act to His Detriment

Jet One marketed to Plaintiff, clearly intending that he rely upon the marketing and representations by sending Jet One money.  This intent is made clear from the fact that Jet One sent Plaintiff wiring instructions. (Williams Dep 110:12-22); (#84-7; P-000028).

**11. Plaintiff Relies Upon Misrepresentations**

Plaintiff decided to purchase an AccessOne Card from Jet One. (Williams

Dep 23:5-9).  In making his decision to purchase, Plaintiff relied upon *inter alia*

the promise that American Express would hold the funds (Williams Dep 104:4-

7),the representations in the brochure (Williams Dep 103:6-8), the representations

on the website (Williams Dep 26:21-24), the affiliation of AmEx with Jet One Jets,

and upon the co-branding of the product (Exh 12 pg 18), the various claims, offers

and perks in the marketing materials (Williams Dep 27:5-10).  Plaintiff had his

father wire $150,000 to Jet One per the wiring instructions from Jet One. (Williams

Dep 30:2- 22); ([#84-7] P-000027 to 28).  But Jet One has noted returned any

funds to Plaintiff, including the $109,368.75 balance.  (Williams Dep 105:2-14).

**12. The Merger Clause Does Not Bar Plaintiff's Claim**

Defendant is incorrect that the merger clause in the agreement bars

Plaintiff's claim.  First, Plaintiff <u>can</u> rely upon pre-agreement promises because he

seeks rescission based upon fraudulent inducement.[2]  Second, a merger clause

cannot defeat a claim under the Fair Business Practices Act.[3]

### 13. Plaintiff's Damages Were Proximately Caused by Jet One's Misrepresentations.

Defendant is incorrect in asserting that Plaintiff's damages were not

proximately caused by Jet One's conduct.  Defendant admits that it did not

transmit Plaintiff's funds to American Express as the written agreement clearly

provides.  Plaintiff did not bargain to be subject to the whims of Jet One, or to be

subject to its insolvency and inability or refusal to pay.  But this is exactly what has

resulted.

On summary judgment, this Court cannot weigh evidence of Jet One's

"partial performance" to rule out a fraudulent intent by Jet One.  For example, in a

Ponzi or Madoff scheme, the wrongdoer strings along investors with partial

performance, having no ultimate intent to fully perform.  This is apparently what

happened here.  Jet One deters an investigation into its misappropriation of

---

[2] See *Crews v. Cisco-Bros. Ford-Mercury, Inc.*, 201 Ga. App. 589, 411 S.E.2d 518 (1991) ("the question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact by the jury."); c.f. *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 770 (1974).

[3] See *Johnson v. GAPVT Motors, Inc.*, 292 Ga.App. 79, 85 (2008) ("O.C.G.A. § 10-1-393(c) provides that, 'a seller may not by contract, agreement, or otherwise limit the operation of this part notwithstanding any other provision of law.'").

Plaintiff's funds, and failure to deliver the funds to American Express, by providing some limited service in the beginning, but ultimately refuses to deliver on the balance.  Accordingly, Jet One cannot demonstrate as a matter of law that Plaintiff cannot recover.

### B. Plaintiff establishes the elements of fraud (Count I)

In order to recover for fraud, a plaintiff is required to show:

> (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. [4]

Here, Plaintiff demonstrates a triable issue on each element.

### 1. False Representations and Omissions of Material Fact

As set forth above, Jet One made a series of misrepresentations to Plaintiff, most importantly that Plaintiff's funds would be held by American Express, and that Plaintiff would receive an AccessOne Card with $160,000 in value.

It is undisputed that all of the three individuals with whom Plaintiff communicated worked on behalf of Jet One Jets.  RJ Lasasso was an employee of Jet One. (Ottimo Dep. 24:17-21).  Louis and Anthony Ottimo were the two executives of Jet One, and had control over Jet One's day-to-day operations. (Ottimo Dep. 17:5-12).  The email address RJ LaSasso sent from was

---

[4] *ASC Const. Equip. USA, Inc. v. City Commercial Real Estate, Inc.*, 303 Ga. App. 309, 315, 693 S.E.2d 559, 565 (2010).

JetOneJets.com. (Williams Dep 18:10-12). Plaintiff spoke with persons at Jet One's New York office. (Williams Dep 15:5-7).  Thus, Defendant's argument that Plaintiff cannot identify the particular person who made representations to him does not demand a judgment in Defendant's favor.

Plaintiff expected that he would receive a Jet One Jets American Express branded card, a humidor, and other gifts, and a point system for additional perks. (Williams Dep 28:5-13).  Jet One and Ottimo did not actually intend to send a welcome package. (Williams Dep 109:25-3); (Ottimo Depo 185:2-12).  Plaintiff has never received an AccessOne Card, silver cigar cutter, or humidor. (Williams Dep 50:9-13; 109:3-9); (Ottimo Dep:245:19-22).

In his communications, Jet One representatives LaSasso and the Ottimos told Plaintiff that American Express was a part of the program. (Williams Dep 45:10-14).

RJ Lassasso or the Ottimos told Plaintiff that the funds would be held in an American Express account. (Williams Dep 39:2-10 74:11-79:1).  This was false. Jet One never ordered an AccessOne card from American Express or AEIS for Plaintiff. (Ottimo Dep 258:14-21)  Jet One did not actually intend to send any funds to American Express (Williams Dep 110:8-11); (Ottimo Depo 185:2-12).Jet

One did not deliver Plaintiff's funds to American Express to AEIS. (Ottimo Dep 183:18-184:25; 258:22-259:3).

Thus, it is irrelevant for the purposes of this motion that Plaintiff identify the particular speaker for each statement, as each were acting for Jet One.  Moreover, the Agreement itself with Jet One includes the promise that Plaintiff receive the American Express branded card, which Jet One now admits it could not provide in the denomination sold, and never intended to provide.

## 2.    Scienter - Jet One's Knowledge That Representation Was False

Jet One admits in its brief that fraud can be predicated upon promises to perform a future act when "such promises were made with a present intention not to perform or where the promisor knows the future event will not take place."[5] Here, Jet One's promises to provide an American Express card in the future ([#84-7] P-000024) constituted actionable fraud because Jet One had a present intent at the time of entering into the Agreement to never provide the card, as evidenced by its conduct and by the admission of its principal Louis Ottimo.  (See Ottimo Depo 185:2-12).

---

[5] *Weir v. McGill*, 203 Ga. App. 431, 417 S.E.2d 57, 59 (1992).

Indeed, this knowledge is presumed because the payment solicited by Jet One from Plaintiff was for the purchase of an AccessOne case in the amount of $160,000.00, a denomination not offered by the American Express branded AccessOne program. (See Ottimo Dec. ¶ 9.). Mr. Ottimo, Jet One's principal, knew that Access One cards could only be sold in 4 increments: $100,000; $200,000; $500,000; and $1 Million. (Ottimo Dep 263 19:25).   Because that fact was built into the contract between Jet One and AEIS, it is inherent that Jet One knew that it could not deliver the promised American Express branded card at the time that it made the sale.

Mr. Ottimo claims that "Mr. Williams was not part of that [American Express] program." (Ottimo Depo 185:2-12).  This reveals the fraudulent intent, from the beginning, that a customer who would transfer $150,000 would *never* receive the contracted for card holding this value. *Id.*  This is not simply a breach of contract; this is fraudulent intent.

**3. Intention to induce the party claiming fraud to act or refrain from acting**

Defendant does not dispute this element.  But it is nevertheless clear that Jet One's marketing, communications, drafting of the Purchase Agreement, and

sending of wiring instructions, were intended to cause Plaintiff to send it funds and enter into the Agreement.

### 4. Diligence by Plaintiff

Jet One's entire argument that Plaintiff was not diligent is its incorrect argument that Plaintiff relies only upon parol promises which it alleges are barred by the merger clause in the Agreement.  This argument fails.

First, as set forth above, the merger clause is inapplicable to bar parol statements because (1) Plaintiff claims fraudulent inducement and seeks rescission, and (2) a merger clause cannot defeat the F.B.P.A.

Second, Plaintiff also relies upon promises <u>within</u> the Agreement itself, including the promise to provide the American Express card.  The Purchase Agreement provided that Plaintiff would have an Access One Card ([#84-7] P-000024); this promise is not parol.  Thus, Defendant does not show the absence of a triable issue.

Plaintiff exercised diligence by researching Jet One before he purchased. (Williams Dep 24:12-13; 114:25-115:14; 28:19-24).  Plaintiff exercised diligence by reviewing the terms of the Agreements. (Williams Dep 25:20-26:4).  But Plaintiff could not possibly know Jet One's secret intent not to perform as

promised, nor the non-public contract between Jet One and AEIS which limited the possible denominations of a card.

The brochure which Ottimo had his company send out specified that an Amex branded card would be send, and that Amex would hold the funds. ([#84-9] P-000117 to 119).  Plaintiff relied partly upon the representations in the brochure in making his decision to purchase. (Williams Dep 103:6-8).   The representations in the brochure were also on the Jet One website. (Williams Dep 9-11).  Plaintiff relied partly upon the representations on the website, in making his decision to purchase. (Williams Dep 26:21-24).

### 5. Reliance by Plaintiff

In making his decision to purchase, Plaintiff relied upon *inter alia* the promise that American Express would hold the funds (Williams Dep 104:4-7),the representations in the brochure (Williams Dep 103:6-8), the representations on the website (Williams Dep 26:21-24), the affiliation of AmEx with Jet One Jets, and upon the co-branding of the product (Exh 12 pg 18), the various claims, offers and perks in the marketing materials (Williams Dep 27:5-10).  Plaintiff had his father wire $150,000 to Jet One per the wiring instructions from Jet One. (Williams Dep 30:2- 22); ([#84-7] P-000027 to 28).

**6. Damages by Plaintiff**

Plaintiff has suffered damages, including the loss of his balance, the loss of the security of collectability through American Express, the loss of having to expend significant attorney's fees and expenses to try to recover from a recalcitrant vendor when he was entitled to a refund from American Express through the Agreement, the cost of a substitute flight, the loss of the collateral material (e.g. humidor) which he was supposed to receive, and other damages.

**C. Plaintiff can demonstrate negligent misrepresentation (Count II)**

Plaintiff asserted a claim for negligent misrepresentation in the alternative to its fraud claim.  Plaintiff is entitled to plead in the alternative.  Essentially, the difference between the claims is the element of intent.[6]  Plaintiff alleges that Jet One actually knew that it could not perform by providing a $160,000 American Express card as contemplated in the Agreement, and that it fraudulently promised to do so.  But, in the alternative, it is possible that a jury might conclude that Jet One and its representatives were negligent or reckless as to the truth or falsity of the promise.

Defendant offers no new argument on Count II than it did for Count I.  As set forth above, there is sufficient evidence of record to support the elements of

---

[6] See *Holmes v. Grubman*, 286 Ga. 636, 640-41, 691 S.E.2d 196, 200 (2010).

fraud and, if the jury concludes that Defendant had a lesser intent, then negligent misrepresentation.

### D. The Corporate Veil Count Applied to the Ottimos

Jet One was included as a relief defendant for Count VIII, because Georgia does not generally recognize reverse veil piercing.  In this context, given the default judgment against Anthony Ottimo Jr., the veil can be pierced as to Anthony Ottimo Jr.  As to Louis Ottimo, to the extent that it is ultimately deemed that the corporate veil may be pierced as to Louis Ottimo, then Jet One is included as a relief defendant for that claim.  Plaintiff incorporates its arguments in his Response Brief to Louis Ottimo's Motion for Summary Judgment.

Upon equitable principles the legal entity of a corporation may be disregarded.[7]  "The concept of piercing the corporate veil is applied in Georgia 'to remedy injustices which arise where such party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.'"[8]"Under that concept, because such party has abused the corporate form, he cannot complain when an injured party does the same and sues him personally."[9]

---

[7] *Broyles v. Johnson*, 99 Ga.App. 69, 71, 107 S.E.2d 851 (1959).
[8] *Earnest v. Merck*, 183 Ga.App. 271, 273, 358 S.E.2d 661, 663 (1987)
[9] *Id.*

The veil should be pierced against the Ottimos for his use of Jet One to promote fraud and injustice, and participating in the scheme to have Plaintiff submit $150,000 for a card, humidor, cigar cutter, and more importantly the backing of American Express, never intending to have Jet One provide it.  The funds were never sent to American Express, their rightful destination.  (Ottimo Dep 183:18-184:25; 258:22-259:3).

## E. Attorney's Fees and Punitive Damages are Warranted

Plaintiff is entitled to his claim for attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.  First, a finding of bad faith is demanded because Defendant committed an intentional fraudulent act, and has made a frivolous and unfounded denial of liability.[10]  Second, a finding that Defendant has been stubbornly litigious is demanded because there is no bona fide controversy or legitimate defense.[11]  Finally, a finding that Defendant has put Plaintiff to unnecessary trouble and expense is demanded because Defendant forced Plaintiff

---

[10] See *D & H Const. Co. v. City of Woodstock*, 284 Ga.App. 314, 643 S.E.2d 826 (2007).

[11] See *Witty v. McNeal Agency, Inc.*, 239 Ga. App. 554, 521 S.E.2d 619 (1999); *Georgia-Carolina Brick & Tile Co. v. Brown*, 153 Ga. App. 747, 266 S.E.2d 531 (1980).

to resort to the courts in order to collect the amounts owed, although no bona fide controversy existed and there is no defense to the breach. [12]

Plaintiff is entitled to his claim for punitive damages because he has a valid claim for fraud. "But even in an action for breach of contract, where there are matters of record relating to fraud, punitive damages can be awarded, for fraud, if found, is tortious conduct. The perpetration of a fraud is one of the specific reasons for allowance of punitive damages."[13]

Therefore, summary judgment to Defendant on Plaintiff's claims for attorney's fees and punitive damages arising out of Defendant's fraud, should not be granted.

## III.   CONCLUSION

For all of the forgoing reasons, Jet One Jets, Inc. is not entitled to summary judgment, and *Defendant Jet One Jets, Inc.'s Motion For Partial Summary Judgment* [#119] must be denied.

---

[12] See *Am. Computer Tech., Inc. v. Hardwick*, 274 Ga. App. 62, 616 S.E.2d 838 (2005); *Patton v. Turnage*, 260 Ga. App. 744, 580 S.E.2d 604 (2003); *Fresh Floors, Inc. v. Forrest Cambridge Apartments, L.L.C.*, 257 Ga. App. 270, 570 S.E.2d 590 (2002); *Backus Cadillac-Pontiac, Inc. v. Ernest*, 195 Ga. App. 579, 394 S.E.2d 367 (1990); *Franchise Enter., Inc. v. Ridgeway*, 157 Ga. App. 458, 278 S.E.2d 33 (1981).

[13] *Ledbetter v. Ledbetter*, 222 Ga. App. 858 (1996) (internal alterations, quotes, and citations omitted).

Respectfully submitted this 28th day of February 2011.

/s James R. Fletcher II
Michael Weinstock
Georgia Bar No. 746454
James R. Fletcher II
Georgia Bar No. 232541

*Attorneys for Plaintiff*
3405 Piedmont Road, N.E.
Suite 300
Atlanta, Georgia 30305
(404) 231-3999
(404) 591-6436 (facsimile)
Email: jfletcher@wslaw.net
        mweinstock@wslaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February 2011, I served opposing parties with the following documents:

(1) Plaintiff's Response In Opposition To Motion For Partial Summary Judgment Of Jet One Jets, Inc.

with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Kenton J. Coppage
Sanders Carter
Smith Moore Leatherwood, LLP
Atlantic Center Plaza, Suite 2300
1180 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 962-1000
Fax: (404) 962-1200
Email: kent.coppage@smithmoorelaw.com
Email: sanders.carter@smithmoorelaw.com

Peter E. Pederson
Daniel K Ryan
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300

Chicago, Illinois  60601
Telephone: 312-704-3248
Fax: 312-704-3001
Email: ppederson@hinshawlaw.com
Email: dryan@hinshawlaw.com

Matthew N. Foree
The Foree Law Firm, P.C.
61 Atlanta Street
Marietta, GA 30060
Telephone: (678) 907-8139
Fax: (678) 623-3111
Email: matt@Foreelaw.com

As a default was entered against Defendant Anthony Ottimo on October 29,
2009, no copy has been delivered to him.

/s/ James R. Fletcher II
Michael Weinstock
Georgia Bar No. 746454
James R. Fletcher II
Georgia Bar No. 232541
Attorneys for Plaintiff

Weinstock & Scavo, P.C.
3405 Piedmont Road, N.E., Suite 300
Atlanta, Georgia 30305
Telephone: (404) 231-3999
Fax: (404) 591-6436
Email: jfletcher@wslaw.net
Email: mweinstock@wslaw.net